UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
____

ANTHONY TERRELL MCGOWAN,

          Plaintiff,          Case No. 1:22-cv-852

v.                                      Honorable Phillip J. Green

CELENA HERBERT, et al.,

          Defendants.
_____/

## OPINION

This is a civil rights action brought by a county detainee under 42 U.S.C. § 1983. Plaintiff has been granted leave to proceed *in forma pauperis*. (ECF No. 4.) Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, Plaintiff consented to proceed in all matters in this action under the jurisdiction of a United States magistrate judge. (ECF No. 1, PageID.6.)

This case is presently before the Court for preliminary review under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court is required to conduct this initial review prior to the service of the complaint. *See In re Prison Litig. Reform Act*, 105 F.3d 1131, 1131, 1134 (6th Cir. 1997); *McGore v. Wrigglesworth*, 114 F.3d 601, 604–05 (6th Cir. 1997). Service of the complaint on the named defendants is of particular significance in defining a putative defendant's relationship to the proceedings.

"An individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process." *Murphy Bros. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347 (1999). "Service of process, under longstanding tradition in our system of justice, is fundamental to any procedural imposition on a named defendant." *Id.* at 350. "[O]ne becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend." *Id.* (citations omitted). That is, "[u]nless a named defendant agrees to waive service, the summons continues to function as the *sine qua non* directing an individual or entity to participate in a civil action or forgo procedural or substantive rights." *Id.* at 351. Therefore, the PLRA, by requiring courts to review and even resolve a plaintiff's claims before service, creates a circumstance where there may only be one party to the proceeding—the plaintiff—at the district court level and on appeal. *See, e.g.*, *Conway v. Fayette Cnty. Gov't*, 212 F. App'x 418 (6th Cir. 2007) ("Pursuant to 28 U.S.C. § 1915A, the district court screened the complaint and dismissed it without prejudice before service was made upon any of the defendants . . . [such that] . . . only [the plaintiff] [wa]s a party to this appeal.").

Here, Plaintiff has consented to a United States magistrate judge conducting all proceedings in this case under 28 U.S.C. § 636(c). That statute provides that "[u]pon the consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings . . . and order the entry of judgment in the case . . . ."

28 U.S.C. § 636(c). Because the named Defendants have not yet been served, the undersigned concludes that they are not presently parties whose consent is required to permit the undersigned to conduct a preliminary review under the PLRA, in the same way they are not parties who will be served with or given notice of this opinion. *See Neals v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995) ("The record does not contain a consent from the defendants[; h]owever, because they had not been served, they were not parties to the action at the time the magistrate entered judgment.").[1]

Under the PLRA, the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim.

---

[1] *But see Coleman v. Lab. & Indus. Rev. Comm'n of Wis.*, 860 F.3d 461, 471 (7th Cir. 2017) (concluding that, when determining which parties are required to consent to proceed before a United States magistrate judge under 28 U.S.C. § 636(c), "context matters" and the context the United States Supreme Court considered in *Murphy Bros.* was nothing like the context of a screening dismissal pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c)); *Williams v. King*, 875 F.3d 500, 503–04 (9th Cir. 2017) (relying on Black's Law Dictionary for the definition of "parties" and not addressing *Murphy Bros.*); *Burton v. Schamp*, 25 F.4th 198, 207 n.26 (3d Cir. Feb. 10, 2022) (premising its discussion of "the term 'parties' solely in relation to its meaning in Section 636(c)(1), and . . . not tak[ing] an opinion on the meaning of 'parties' in other contexts").

3

## Discussion

**I.     Factual Allegations**

Plaintiff is presently incarcerated at the Berrien County Jail (BCJ) in St. Joseph, Berrien County, Michigan. The events about which he complains occurred at that facility. Plaintiff sues Sheriff L. Paul Bailey and Lieutenant Celena Herbert. Plaintiff sues Defendant Bailey in his official capacity only, and Defendant Herbert in her official and individual capacities. (ECF No. 1, PageID.2.)

Plaintiff alleges that on April 22, 2022, he told Deputy Zabel (not a party) that he needed to be moved because inmates in his unit, Dorm 2-E, were calling him a snitch. (*Id.*, PageID.3.) Deputy Rankin (not a party) interviewed Plaintiff regarding his request, and Plaintiff told her that he had been assaulted by other inmates in Dorm 2-E for providing information to the Berrien County Prosecuting Attorney's Office in a pending criminal matter against an individual named Carter. (*Id.*) Plaintiff was then placed in administrative housing/protective custody. (*Id.*)

On May 28, 2022, Plaintiff sent an affidavit requesting continued protective custody to Defendant Herbert, who at the time was the classification officer. (*Id.*) In the affidavit, Plaintiff "begged and pleaded" to not be removed from protective custody because inmates were threatening to kill and hurt him. (*Id.*) Plaintiff sent copies of this affidavit to Defendant Bailey and "other ranking BCJ employees." (*Id.*)

On June 13, 2022, Defendant Herbert forced Plaintiff to leave protective custody and return to Dorm 2-E. (*Id.*, PageID.4.) On July 7, 2022, Defendant Herbert moved inmate Richard Hill into Dorm 2-E. (*Id.*) Hill asked inmate worker/trustee Dean Bell to obtain copies of the transcripts from the pending criminal matter in

which Plaintiff had provided information. (*Id.*) Bell was able to obtain the transcript from the preliminary hearing, proof that Plaintiff had testified. (*Id.*) After Hill read the transcript, he assaulted Plaintiff, injuring his left eye and neck. (*Id.*) Plaintiff also "suffered from blows to the head and was choked by Hill." (*Id.*) Bell was fired from his worker position, and Hill pled guilty to assault and battery. (*Id.*)

Plaintiff contends that he suffers from mental issues and has been prescribed psychiatric medication to deal with anxiety he suffers from the assault. (*Id.*, PageID.5.) He still suffers from daily pain and loss of vision in his left eye. (*Id.*) Plaintiff alleges that Defendant Herbert moved him back into Dorm 2-E "out of retaliation because Plaintiff has written grievances about BCJ jail conditions . . . and for snitching on Carter." (*Id.*)

Based on the foregoing, Plaintiff alleges violations of his First, Fifth, Eighth, and Fourteenth Amendment rights. (*Id.*, PageID.3.) He seeks compensatory and punitive damages. (*Id.*, PageID.6.)

## II.     Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that

is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A. Official Capacity Claims

As noted *supra*, Plaintiff sues Defendant Bailey in his official capacity only, and sues Defendant Herbert in both her official and individual capacities. (ECF No. 1, PageID.2.) Official capacity lawsuits "generally represent only another way of

pleading an action against an entity of which an officer is an agent." *Kentucky v. Graham*, 473 U.S. 159, 165 (1985) (citing *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 690 n. 55 (1978)). An official capacity suit is to be treated as a suit against the entity itself. *Id.* at 166 (citing *Brandon v. Holt*, 469 U.S. 464, 471–72 (1985)); *see also Matthew v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994). "Individuals sued in their official capacities stand in the shoes of the entity they represent," and the suit is not against the official personally. *See Alkire v. Irving*, 330 F.3d 802, 810 (6th Cir. 2003); *see also Graham*, 473 U.S. at 165–66.

Here, because Defendants represent Berrien County, Plaintiff's suit against them in their official capacities necessarily intends to impose liability on the county. Berrien County, however, may not be held vicariously liable for the actions of its employees under § 1983. *See Connick v. Thompson*, 563 U.S. 51, 60 (2011); *City of Canton v. Harris*, 489 U.S. 378, 392 (1989); *Monell*, 436 U.S. at 694. Instead, a county is liable only when its official policy or custom causes the injury. *Connick*, 563 U.S. at 60. This policy or custom must be the moving force behind the alleged constitutional injury, and the plaintiff must identify the policy or custom, connect it to the governmental entity, and show that his injury was incurred because of the policy or custom. *See Turner v. City of Taylor*, 412 F.3d 629, 639 (6th Cir. 2005); *Alkire*, 330 F.3d at 815 (6th Cir. 2003). "Governmental entities cannot be held responsible for a constitutional deprivation unless there is a direct causal link between a municipal policy or custom and the alleged violation of constitutional

7

rights." *Watson v. Gill*, 40 F. App'x 88, 89 (6th Cir. 2002) (citing *Monell*, 436 U.S. at 692).

A policy includes a "policy statement, ordinance, regulation, or decision officially adopted and promulgated" by the sheriff's department. *See Monell*, 436 U.S. at 690. Moreover, the Sixth Circuit has explained that a custom "for the purposes of *Monell* liability must be so permanent and well settled as to constitute a custom or usage with the force of law." *Doe v. Claiborne Cnty.*, 103 F.3d 495, 507 (6th Cir. 1996). "In short, a 'custom' is a 'legal institution' not memorialized by written law." *Id.* Here, Plaintiff's complaint is devoid of any allegations suggesting that his alleged constitutional injury was the result of an official policy or custom employed by Berrien County. The Court, therefore, will dismiss Plaintiff's official capacity claims against Defendants. Accordingly, that leaves only Plaintiff's individual capacity claims against Defendant Herbert.

### B. Individual Capacity Claims Against Defendant Herbert

#### 1. First Amendment Retaliation

Plaintiff alleges that Defendant Herbert violated his First Amendment right to be free from retaliation. (ECF No. 1, PageID.3.) Specifically, Plaintiff contends that Defendant Herbert moved him back to Dorm 2-E to retaliate against Plaintiff because he had submitted grievances about conditions at BCJ and because he "snitch[ed] on Carter." (*Id.*, PageID.5.)

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff

8

must establish three elements: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

It is well recognized that "retaliation" is easy to allege and that it can seldom be demonstrated by direct evidence. *See Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005); *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987). "[A]lleging merely the ultimate fact of retaliation is insufficient." *Murphy*, 833 F.2d at 108. "[C]onclusory allegations of retaliatory motive 'unsupported by material facts will not be sufficient to state . . . a claim under § 1983.'" *Harbin-Bey*, 420 F.3d at 580 (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538–39 (6th Cir. 1987)); *see also Murray v. Unknown Evert*, 84 F. App'x 553, 556 (6th Cir. 2003) (discussing that in complaints screened pursuant to 28 U.S.C. § 1915A, "[c]onclusory allegations of retaliatory motive with no concrete and relevant particulars fail to raise a genuine issue of fact for trial" (internal quotation marks omitted)); *Lewis v. Jarvie*, 20 F. App'x 457, 459 (6th Cir. 2001) ("[B]are allegations of malice on the defendants' parts are not enough to establish retaliation claims [that will survive § 1915A screening.]" (citing *Crawford-El v. Britton*, 523 U.S. 574, 588 (1998))).

9

Plaintiff engaged in protected conduct by filing grievances concerning conditions at BCJ. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001); *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000). Moreover, Plaintiff engaged in protected activity when he testified against Carter at Carter's preliminary hearing. *See Stokes v. Sparks*, No. 95-4243, 1996 WL 452837, at *1 (6th Cir. Aug. 8, 1996); *Hicks v. Haynie*, No. 1:19-cv-6, 2020 WL 8474737, at *7 (W.D. Mich. Dec. 21, 2020). Plaintiff, however, merely alleges the ultimate fact of retaliation in this action. His complaint is completely devoid of facts suggesting that Defendant Herbert even knew about Plaintiff's grievances concerning conditions at BCJ or that Plaintiff had testified against Carter. Nothing in the complaint permits the Court to infer that Defendant Herbert retaliated against Plaintiff because of his protected conduct. Plaintiff's speculative allegations, therefore, fail to state a First Amendment retaliation claim against Defendant Herbert, and such claim will be dismissed.

### 2. Fifth Amendment Claims

Plaintiff suggests that Defendant Herbert's actions violated his Fifth Amendment due process rights. (ECF No. 1, PageID.3.) The Fifth Amendment, however, applies only to claims against federal employees, and here, Plaintiff has sued employees of Berrien County. Plaintiff, therefore, cannot maintain his Fifth Amendment claims, and those claims will be dismissed. *See Scott v. Clay Cnty., Tenn.*, 205 F.3d 867, 873 n.8 (6th Cir. 2000) (noting that "[t]he Fourteenth Amendment's Due Process Clause restricts the activities of the states and their instrumentalities; whereas the Fifth Amendment's Due Process Clause circumscribes only the actions of the federal government").

10

### 3. Eighth and Fourteenth Amendment Claims

Plaintiff also contends that Defendant Herbert violated his rights under the Eighth and Fourteenth Amendments. (ECF No. 1, PageID.3.) The Eighth Amendment applies to claims brought by convicted prisoners, *see Phelps v. Coy*, 286 F.3d 295, 300 (6th Cir. 2002), whereas the Fourteenth Amendment's Due Process Clause governs claims brought by pretrial detainees. *See Winkler v. Madison Cnty.*, 893 F.3d 877, 890 (6th Cir. 2018). Pretrial detainees' claims of deliberate indifference were previously analyzed under the standard announced in *Farmer v. Brennan*, 511 U.S. 825, 828 (1994), requiring that a prisoner prove both an objective risk of serious harm and that a defendant subjective knew of and disregarded that risk. *Id.* at 834.

In 2015, however, the Supreme Court held that a pretrial detainee asserting a Fourteenth Amendment excessive force claim does not need to show that "the officers were subjectively aware that their use of force was unreasonable;" instead, the detainee could show that "the officers' use of that force was objectively unreasonable." *See Kingsley v. Hendrickson*, 576 U.S. 389, 392–93 (2015). After *Kingsley*, the United States Court of Appeals for the Sixth Circuit altered the test for a pretrial detainee alleging that jail officials were deliberately indifferent to medical needs. *See Brawner v. Scott Cnty.*, 14 F.4th 585 (6th Cir. 2021), *reh'g en banc denied*, 18 F.4th 551 (6th Cir. 2021). Subsequently, the Sixth Circuit extended *Brawner* to a pretrial detainee's deliberate indifference claim based upon failure to protect. *See Westmoreland v. Butler Cnty.*, 29 F.4th 721, 729 (6th Cir. 2022), *reh'g en banc denied*, 35 F.4th 1051 (6th Cir. 2022). With these standards in mind, the Court considers Plaintiff's

11

remaining claims—a failure-to-protect claim and an equal protection claim—against Defendant Herbert.

### a. Failure to Protect

Plaintiff avers that Defendant Herbert failed to protect him from harm by removing him from protective custody and placing him back in Dorm 2-E, where he was ultimately assaulted by inmate Hill. (ECF No. 1, PageID.4.) A pretrial detainee alleging deliberate indifference for failure to protect must establish the following: "a defendant officer must [1] act intentionally in a manner that [2] puts the plaintiff at a substantial risk of harm, [3] without taking reasonable steps to abate that risk, [4] and by failing to do so actually cause the plaintiff's injuries." *Westmoreland*, 29 F.4th at 729. Essentially, the detainee must show that the officer "was more than merely negligent; the officer must have acted with 'reckless disregard' in the face of 'an unjustifiably high risk of harm.'" *Id.* at 730 (quoting *Brawner*, 14 F.4th at 596).

As noted above, Plaintiff contends that Defendant Herbert failed to protect him from harm by removing him from protective custody and placing him back in Dorm 2-E, where he was ultimately assaulted by inmate Hill. (ECF No. 1, PageID.4.) Plaintiff alleges that prior to his removal from protective custody, he had sent an affidavit requesting continued protection to Defendant Herbert on May 28, 2022. (*Id.*, PageID.3.) Plaintiff attached a copy of the affidavit to his complaint, and in the affidavit, Plaintiff states that he "was subjected to assaults daily while housing in 2-E[] by other inmates," and he requests that he "not [be] move[d] out of [administrative] housing/segregation/protection" and not be placed "in 2-E again because everyone in the[re] knew [he] gave information on Carter." (ECF No. 1-2,

12

PageID.10.) Subsequently, on June 13, 2022, Plaintiff was moved to Dorm 2-E. Although it is clear that Plaintiff would have preferred to remain in protective custody because of his fear of assault from inmates who were previously housed in Dorm 2-E, Plaintiff does not allege that the same inmates who were previously housed in Dorm 2-E and threatened him in April 2022 were housed there upon Plaintiff's return to that unit on June 13, 2022. Indeed, Plaintiff remained in Dorm 2-E without incident from June 13, 2022, until July 7, 2022, when inmate Richard Hill—who was not previously housed in Dorm 2-E—was moved to the unit. (*See* ECF No. 1, PageID.4.) Under these circumstances, Plaintiff simply has not alleged facts suggesting that Defendant Herbert acted with "reckless disregard" by removing him from protective custody and placing him back in Dorm 2-E. *See Westmoreland*, 29 F.4th at 730 (quoting *Brawner*, 14 F.4th at 596).

Likewise, Plaintiff fails to set forth a plausible failure-to-protect claim premised upon Defendant Herbert's placement of inmate Hill in Dorm 2-E. Nothing in the complaint can lead the Court to plausibly infer that Defendant Herbert was aware of any issues between Plaintiff and Hill prior to Hill's placement in Dorm 2-E. Furthermore, Plaintiff's complaint is wholly devoid of facts suggesting that Defendant Herbert was aware of Hill's plan to have inmate Dean obtain the transcript from Carter's preliminary hearing to have proof that Plaintiff had "snitched" on Carter prior to Hill's assault on Plaintiff. Plaintiff has not alleged facts suggesting that Defendant Herbert acted with "reckless disregard" by placing inmate

13

Hill in Dorm 2-E with Plaintiff. *See Westmoreland*, 29 F.4th at 730 (quoting *Brawner*, 14 F.4th at 596).

Overall, Plaintiff has not sufficiently alleged facts suggesting that Defendant Herbert acted intentionally to put him at a substantial risk of harm. *See id.* at 729. His failure-to-protect claims against her will, therefore, be dismissed.

### b. Equal Protection

Plaintiff vaguely suggests that Defendant Herbert violated his equal protection rights under the Fourteenth Amendment. (ECF No. 1, PageID.3.) The Equal Protection Clause prohibits discrimination by government actors which either burdens a fundamental right, targets a suspect class, or intentionally treats one differently than others similarly situated without any rational basis for the difference. *Rondigo, L.L.C. v. Twp. of Richmond*, 641 F.3d 673, 681–82 (6th Cir. 2011); *Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 312 (6th Cir. 2005). Plaintiff does not identify a fundamental right, and he does not allege that he is a member of a suspect class. "[P]risoners are not a suspect class," *Hadix v. Johnson*, 230 F.3d 840, 843 (6th Cir. 2000), "nor are classifications of prisoners," *Mader v. Sanders*, 67 F. App'x 869, 871 (6th Cir. 2003).

To state an equal protection claim in a class-of-one case, Plaintiff must show "intentional and arbitrary discrimination" by the state; that is, he must show that he "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000); *see also Nordlinger v. Hahn*, 505 U.S. 1, 10–11 (1992); *United States v. Green*, 654 F.3d 637, 651 (6th Cir. 2011). "[T]he hallmark of [a 'class-

14

of-one'] claim is not the allegation that *one individual* was singled out, but rather, the allegation of arbitrary or malicious treatment not based on membership in a disfavored class." *Davis v. Prison Health Servs.*, 679 F.3d 433, 441 (6th Cir. 2012) (alterations in original) (citations omitted); *see Lazy Y Ranch Ltd. v. Behrens*, 546 F.3d 580, 592 (9th Cir. 2008) ("The 'class of one' theory . . . is unusual because the plaintiff in a 'class of one' case does not allege that the defendants discriminate against a *group* with whom she shares characteristics, but rather that the defendants simply harbor animus against her *in particular* and therefore treated her arbitrarily." (emphasis in original)). A plaintiff "must overcome a 'heavy burden' to prevail based on the class-of-one theory." *Loesel v. City of Frankenmuth*, 692 F.3d 452, 462 (6th Cir. 2012) (citing *TriHealth, Inc. v. Bd. of Comm'rs, Hamilton Cnty.*, 430 F.3d 783, 791 (6th Cir. 2005)). "Unless carefully circumscribed, the concept of a class-of-one equal protection claim could effectively provide a federal cause of action for review of almost every executive and administrative decision made by state actors." *Id.* (quoting *Jennings v. City of Stillwater*, 383 F.3d 1199, 1210–11 (10th Cir. 2004)).

The threshold element of an equal protection claim is disparate treatment. *Scarbrough v. Morgan Cnty. Bd. of Educ.*, 470 F.3d 250, 260 (6th Cir. 2006). "To state an equal protection claim, a plaintiff must adequately plead that the government treated the plaintiff 'disparately as compared to similarly situated persons and that such disparate treatment either burdens a fundamental right, targets a suspect class, or has no rational basis.'" *Ctr. for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 379 (6th Cir. 2011) (quoting *Club Italia Soccer & Sports Org., Inc.*, 470 F.3d at

15

298)). "Similarly situated' is a term of art—a comparator . . . must be similar in 'all relevant respects." *Paterek v. Vill. of Armada*, 801 F.3d 630, 650 (6th Cir. 2015) (quoting *United States v. Green*, 654 F.3d 637, 651 (6th Cir. 2011)); *see also Nordlinger*, 505 U.S. at 10; *Tree of Life Christian Sch. v. City of Upper Arlington*, 905 F.3d 357, 368 (6th Cir. 2018).

Plaintiff's equal protection claim is wholly conclusory. He fails to identify any fellow inmate or individual who was similar in all relevant aspects. Moreover, Plaintiff's complaint is wholly devoid of facts suggesting that Defendant Herbert intentionally and arbitrarily discriminated against him. Plaintiff's conclusory allegations simply do not suffice to state a claim. *See Iqbal*, 556 U.S. at 678 ("[T]he tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements."). The Court, therefore, will dismiss Plaintiff's Fourteenth Amendment equal protection claim against Defendant Herbert.

## **Conclusion**

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's complaint will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). Although the Court concludes that Plaintiff's claims are properly dismissed, the Court does not conclude that any issue Plaintiff might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445

(1962). Accordingly, the Court does not certify that an appeal would not be taken in good faith. Should Plaintiff appeal this decision, the Court will assess the $505.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610–11, unless Plaintiff is barred from proceeding *in forma pauperis*, *e.g.*, by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A judgment consistent with this opinion will be entered.


Dated:  October 11, 2022  /s/ Phillip J. Green
PHILLIP J. GREEN
United States Magistrate Judge